MORITZ MILLER, Respondent, v. FIREMEN'S INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals. Opinion Filed March 8, 1921.

1. **INSTRUCTIONS: Fire Insurance: Valued Policy Law: Instruction on Measure of Recovery: Proper as Not Omitting Necessary Elements and Directing Verdict.** An instruction that under the law

of this State an insurance company is prohibited from taking a risk on any property in this State at a greater rate than three-fourths of the value of the property insured, and when an insurance company writes a policy for a certain sum it is precluded from asserting that the value of the property at the time the insurance is taken out is not one-fourth more than the total amount of insurance, and that the jury should consider that the property insured was worth, at the time the policy was taken out, one-fourth more than the total insurance, and the only depreciation or lessening of the value of the property by sales or otherwise was, such as occurred after the policy was written, while its verbage may not be of the best, the purport of the instruction is to direct the jury as to the law respecting the measure of the recovery under section 7030, Revised Statutes 1909, then in force, and did not purport to cover the whole case and direct a verdict, and therefore was not erroneous as authorizing a verdict for plaintiff without any finding for plaintiff upon vital questions under the issues of the case.

2. INSURANCE: Fire Insurance: Defenses of Fraud in Burning Property and False Swearing as to Proof of Loss: Not Available to Dispute Valuation. Under section 7030, Revised Statutes 1909, providing that no company shall take a risk on any property in this State, at a ratio greater than three-fourths of the property insured, and when taken its value shall not be questioned in any proceeding, the defense that the fire was caused by the willful and intentional act of plaintiff for the purpose of destroying the property, coupled with a defense of false swearing in connection with the proof of loss, is not fraud in the procurement of the policy, and defendant was precluded from asserting that the value of the property, at the time of the issuance of the policy, was less than four-thirds of the amount of the insurance.

3. INSTRUCTIONS: Fire Insurance: Valued Policy Law: Instruction on Valuation Inaccurate: Not Error Because Favorable to Appellant. In an action on a fire insurance policy, an instruction telling the jury to consider the value of the property as "one-fourth more than the total insurance" was inaccurate as the instruction should have told the jury that the property is to be regarded as worth, at the time of the issuance of the policy, one-third more than the total insurance thereon; but the inaccuracy was one in appellant's favor and of which is could not complain.

4. INSURANCE: Fire Insurance: Salvage: Total Loss: Evidence. In an action on a fire insurance policy, while the evidence adduced in plaintiff's behalf tended to show a total loss, and some of the evidence adduced by defendant might warrant the inference that

there was salvage of some substantial value remaining after the fire, yet this inference, in view of the evidence was not a necessary one, and hence not one which the jury was obliged to draw.

5. **INSTRUCTIONS: Fire Insurance: Instruction as to Probability of Burning by Insured: Modification to Require Proof by Preponderance of Evidence Not Error.** In an action on a fire insurance policy, an instruction to find for the defendant if the jury were of opinion from the evidence that it was more probable that the burning of the property was brought about by the procurement of the plaintiff than that he was innocent of it, was modified by adding "according to the weight and preponderance of the evidence." Held not prejudicial error.

6. **INSURANCE: Fire Insurance: Willful Destruction of Property by Insured: Affirmative Defense: Burden of Proof.** In an action on a fire insurance policy, the defense of willful and intentional destruction of the property by plaintiff was an affirmative defense, as to which defendant carried the burden.

7. **INSTRUCTIONS: Erroneous Instruction on ''Burden of Proof'' and ''Preponderance of Evidence:'' Properly Refused.** An instruction that in mentioning "the burden of proof" and the "preponderance of the evidence" the court means merely to briefly express the rule of law that unless the evidence in regard to the facts necessary to a verdict in favor of plaintiff appear more credible than the contrary evidence in regard to said facts, the verdict should be for defendant, was properly refused, as it would not have furnished a proper guide to the jury as to what was meant by the terms "burden of proof" and "preponderance of the evidence" used in other instructions.

8. **————: Failure to Define ''Burden of Proof'' and ''Preponderance of Evidence'' Not Reversible Error.** It is not reversible error to fail to define the terms "burden of proof" and "preponderance of the evidence."

9. **TRIAL PRACTICE: Remarks of Counsel: Objections Sustained: No Further Action Asked: Cannot Complain.** Where defendant's objections to the argument of plaintiff's counsel were sustained and there was no request that the court go further by way of rebuking counsel or otherwise, defendant had no room for complaint in that regard.

10. **APPELLATE PRACTICE: Remarks of Counsel: Argument Against Branding Plaintiff and his Children by Finding That he Burned Insured Property: Not Reversible Error.** In an action on a fire insurance policy where one of the defenses was that the fire was caused by the willful and intentional act of plaintiff for the purpose of destroying the property, the remark of plaintiff's counsel

in his argument, "Will a man be branded, and his children after him be branded, until they go down to their graves, they had a dishonest father, by such testimony as this," did not transcend the bounds of legitimate argument under the circumstances; at any rate, not to the extent of warranting an appellate court in disturbing the judgment on this ground, in view of the further defense that plaintiff was an alien enemy and testimony concerning plaintiff's children was introduced, and counsel by referring to the children did not go beyond the record.

11. **INSURANCE: Fire Insurance: Vexatious Refusal to Pay: Statute: Penal: Strictly Construed.** Section 6337, Revised Statutes 1919, permitting a recovery of damages and a reasonable attorney's fee if it appear from the evidence that the insurance company has vexatiously refused to pay the loss, is a penal statute and as such must be strictly construed.

12. ———: ———: ———: **Verdict: Adverse: Not Conclusive.** A vexatious refusal to pay a loss, within the meaning of section 6337, Revised Statutes 1919, is not to be deduced from the fact alone that the verdict is adverse to the defendant.

13. ———: ———: ———: **Must be Willful and Without Reasonable Cause.** In order to warrant the assessment of damages and attorneys' fees, under section 6337, Revised Statutes 1919, as for a vexatious refusal to pay, it must appear that the refusal to pay the loss was both willful and without reasonable cause.

14. ———: ———: ———: **Substantial Evidence of Willful Destruction of Property: Refusal to Pay Not Vexatious.** In an action on a fire insurance policy where there was substantial evidence, though circumstantial in character, tending to establish the defense of the willful destruction of the property by plaintiff, *held* that the only conclusion warranted by the facts is that defendant had reasonable cause to refuse to pay the loss on this ground, and hence was entitled to try out this issue before a jury without being penalized for so doing.

Appeal from the Circuit Court of Lincoln County.— *Hon. Edgar B. Woolfolk,* Judge.

REVERSED AND REMANDED (*with directions*).

*Leahy & Saunders, D. E. Williams,* and *D. W. Voyles* for appellant.

(1) The penalty of attorney's fees and damages should not be inflicted, where the evidence and circum-

stances in the case show that refusal to pay the claim made was not willful and without reasonable cause as the facts would appear to a reasonable and prudent man before a trial of the cause. Patterson v. Insurance Co., 174 Mo. App. 37; Jones v. Prudential Ins. Co., 155 S. W. 1106; R. S. 1909, sec. 7068 as amended Acts 1911, p. 282; Fay v. Aetna Ins. Co., 268 Mo. 373; Strawbridge v. Ins. Co., 174 Mo. App. 37; Non-Royalty Shoe Co. v. Ins. C., 210 S. W. 37. (2) Recovery as for a total loss in unwarranted where there was evidence of substantial salvage and where the insured's proof of loss shows there was substantial salvage. Sharp v. Insurance Co., 164 Mo. App. 475; Non-Royalty Shoe Co. v. Phoenix Ins. Co., 178 S. W. 246; R. S. 1909, sec. 7022; Brannigan v. Jefferson Mutual Fire Ins. Co., 102 Mo. App. 70; Stevens v. Fire Ins. Co., 120 Mo. App. 88. (3) Where willful and intentional burning is in issue in a civil case it is the duty of the jury to return a verdict for defendant, if the jury be of the opinion, from the evidence, that it is more probable that the burning was brought about by the insured than that he was innocent of it. The defendant, in such cases, is entitled to an instruction to that effect, and distinguishing a criminal from a civil case. State ex rel. Insurance Co. v. Ellison, 187 S. W. 23; Rothschild v. American Central Ins. Co., 62 Mo. 356; Polster v. See, 54 Mo. 291; Marshall v. Thames Ins. Co., 43 Mo. 586. Refusal to give instruction defining meaning of term "preponderance of the evidence" was prejudicial, hence erroneous under the peculiar facts in this case. Jones v. Durham, 94 Mo. App. 51; Mackin v. Railway Co., 45 Mo. App. 82. (4) Revised Statutes, 1909, section 7030, containing the three-fourths valuation clause, providing that the value as of the date of the policy shall not be questioned in any proceeding, does not apply to a clause based on fraud; nor where fraud in the inception of the policy is a relevant subject of inquiry under the issues. Harvester v. Insurance Co., 105 Mo. App. 575; Hartford Fire Ins. Co. v. Redding, 67 L. R. A. 515; Farber v. American Automobile Ins. Co., 191 Mo. App. 307; Walker v. Phœnix Ins. Co.

62 Mo. App. 209; 4 Cooley's Briefs on Insurance, page 3087. Where willful burning is in issue, the value and desirability of the property are relevant matters. First National Bank v. Fire Assn., 33 Ore. 172, 53 Pac. 8; Storm v. Phoenix Ins. Co., 61 Hun. 618, affirmed 133 N. Y. 653. (5) The trial court should not permit argument which amounts to an appeal to the jury to give judgment for one party on account of his poverty, or wealth of the opposite party; nor permit counsel to wring verdicts from the jury by statement of matters extraneous to the record, relying upon disinclination of appellate courts to interfere; intemperate, invective, and uncalled for abuse of parties and witnesses, is an attack on the fair administration of justice. Haynes v. Trenton, 108 Mo. 123; Parris v. Crutcher, 189 Mo. App. 151; Cameron v. Cameron, 162 Mo. App. 110; Wendler v. People's House Furn. Co., 165 Mo. 543; Norris v. Railroad, 239 Mo. 695, Tarreyson v. Railroad, 144 Mo. App. 626, Brady v. Springfield Traction Co., 174 S. W. 1070. (6) Plaintiff's given instruction No. 1 was erroneous because authorizing a verdict for plaintiff, without any finding for plaintiff upon vital questions in the case, such as measure of damage, absence of fraudulent oath, and willful burning under the issues in the case. State ex rel. Long v. Ellison, 272 Mo. 571, 199 S. W. 984.

*Abbott, Fauntleroy, Cullen & Edwards* for respondent.

(1) Three-fourths value statute—R. S. 1909, sec. 7030. Under the above section, prior to the Act of 1919, the property is taken as worth not the amount for which it is insured, but the amount of insurance is conclusively presumed to be only three-fourths of its value, and in case of loss the burden of proof is on the insured to show that there was no depreciation of the value of such property between the time of the issuance of the policy and the fire. Smith v. Fire Ins. Co., 195 Mo. App. 379, 191 S. W. 1034. The above section, prior to the Act of 1919,

was considered as a direction to insurance companies not to insure for more than three-fourths of the value of the property, and when they fixed the value and issued insurance for the sum fixed, they should not be allowed to dispute that such sum was three-fourths of the value. Crossan v. Ins. Co., 133 Mo. App. 537, 113 S. W. 704; Spickard v. Fire Association, 164 Mo. App. 1, 146 S. W. 808; Weston v. Ins. Co., 191 Mo. App. 282, 177 S. W. 792. The above section relates to the value of the property at the time of insurance and not at the time of the fire. Strawbridge v. Fire Ins. Co., 193 Mo. App. 687, 187 S. W. 79. If there are several policies, their total amount will be considered as only three-fourths of the value. Harris v. Hartford Ins. Co., 191 S. W. 1037. The jury should be permitted to determine the deterioration, if any, in the property insured, since the issuance of the policy. La Fonte v. Home Ins. Co., 193 Mo. App. 543, 182 S. W. 1029; R. S. 1919, sec. 6239, p. 1962. (2) Damages—R. S. 1909, sec. 6337. Formal affirmative proof of vexatious refusal to pay is not required. Brown v. Railway Passenger Assur. Co., 45 Mo. 221; Lockwood v. Atlantic Mut. Ins. Co., 47 Mo. 50; Blackwell v. American Cent. Ins. Co., 80 Mo. App. 75. Damages may be awarded although there is no direct and positive proof of vexatious delay. Coscarella v. Ins. Co., 175 Mo. App. 130, 157 S. W. 873; Stix v. Indemnity Co., 175 Mo. App. 171, 157 S. W. 870. The question of vexatious refusal or delay in payment is to be determined by the jury. Brown v. Railway Passenger Assur. Co., 45 Mo. 221; Keller v. Home Life Ins. Co., 95 S. W. 903; Hicks v. Metropolitan Life Ins. Co., 196 Mo. App. 162, 190 S. W. 661; R. S. 1919, sec. 6337, p. 1996. The same rule applies to realty. When the property destroyed is real property it is taken as worth the amount for which it is insured by the policy less any deterioration that it may have suffered between the date of the issuance of the policy and the date of the fire, and the burden of proving such deterioration, if any, is on the insurer. Smith v. Ins. Co.,

206 M. A.—31

195 Mo. App. 384, 191 S. W. 1034; Rogers v. Fire Ins. Co., 157 Mo. App. 671, 139 S. W. 265; La Fonte v. Home Ins. Co., 193 Mo. App. 543, 182 S. W. 1029; Ins. Co. v. Ry., 174 Mo. App. 542, 160 S. W. 907; R. S. 1919, Sec. 6229, p. 1957. (3) The remarks of counsel were not improper and the record fails to show a state of facts which would give this court authority to review the rulings. Cotton Lumber Co. v. LaCrosse Lumber Co., 200 Mo. App. 26; Milliken v. Larrabie, 192 S. W. 106; Torreyson v. United Rys. Co., 246 Mo. 706-707; Sperry v. Hurd, 267 Mo. 639; Diehl v. Bestgen, 217 S. W. 555.

ALLEN, J. —This is an action on a policy of fire insurance for the sum of $4000, issued by the defendant insurance company to plaintiff on December 20, 1916, insuring personal property consisting of a stock of goods—dry goods, notions, etc.—and furniture and fixtures located in a building at 4612 Florissant avenue in the City of St. Louis, for a term of one year from said date. There was other insurance on the property, and the policy in suit covered its proportion on two items, namely, $7500 on the stock in trade, and $500 on the furniture and fixtures.

The trial, before the court and a jury, resulted in a verdict in plaintiff's favor for $4000, "without interest," with a finding that defendant had vexatiously refused to pay the loss, assessing damages therefor at the sum of one dollar and allowing plaintiff an attorney's fee of $500. From a judgment entered accordingly defendant appeals.

The petition alleges that on December 20, 1916, plaintiff was the sole and unconditional owner of the property, which was located at the place aforesaid until it was damaged and destroyed by fire. After alleging the issuance of the policy to plaintiff by defendant, the petition alleges that on January 8, 1917, a fire occurred at the place mentioned, which directly damaged and destroyed the insured's property to the extent and amount of $10,500, by reason whereof plaintiff suffered a direct loss by fire to the property in said sum; and that at said time and

all times prior thereto, the insured property was of the actual cash value of $10,500.

The petition further alleges that plaintiff gave defendant due notice of the loss, and performed all of the terms and conditions of the contract of insurance to be performed by him, and that under the terms and conditions of the policy the insurance is due and payable to him; that he has demanded payment thereof from defendant, but that defendant has wrongfully, unlawfully and vexatiously refused to adjust the loss or pay plaintiff the same or any part thereof. Further allegations are made as to defendant's vexatious refusal to pay, and judgment is prayed for the sum of $4000 with interest from June 27, 1917, together with ten per cent. thereon as damages and a reasonable attorney's fee, to-wit, $500.

In the amended answer upon which the case was tried defendant admits the issuance of the policy, denying generally the other allegations of the petition. It is then averred that prior to January 8, 1917, the stock of goods had decreased in value by wear and tear and by sale and removal, so that at the time of the fire it was not of a value in excess of $3400; and defendant specifically denies that its value was as alleged by plaintiff, averring that by the terms of the policy defendant was not liable beyond the actual cash value thereof, and that in any event plaintiff can recover no greater proportion of the loss than the amount of this policy bears to the whole insurance on the property.

Defendant further pleads in defense that the fire was caused by the willful and intentional act of plaintiff, for the purpose of cheating and defrauding defendant, whereby the policy was rendered void. And defendant sets up a clause in the policy relating to false swearing, and alleges that plaintiff, in his proofs of loss, made certain false statements, under oath, as to the origin of the fire and the sound value of the property at the time of the loss thereby rendering the policy void. And defendant also avers that plaintiff, at the institution of the suit, was a citizen of Austria-Hungary, a nation at war with the United States, and

hence an alien enemy, and is therefore not entitled to maintain this suit.

The reply put in issue the new matter in the answer.

In behalf of plaintiff one Isaac Deutch testified that at one time he and a Mrs. Saffron owned the stock of goods in question; that they purchased it from one Genzberger in Louisiana, Missouri, where they conducted a mercantile business for a time, and then removed the goods to a storage house in St. Louis, where it remained a few months, after which time it was taken to the store building at 4612 Florissant avenue, where it was sold to plaintiff on December 8, 1916. The witness further testified that he saw the stock of goods after it was sold to plaintiff, about a week before the fire; that he was familiar with the condition and value thereof, and that it was "an up-to-date stock consisting of men's and women's ready to wear clothing, gent's furnishings, dry goods, shoes, hats, and general merchandise;" and that the fixtures were "shelves, counters and a couple of cases and stock fixture tables." And he said that the actual value of the stock then was about $11,000, and that the fixtures were of the value of about $700 or $800. He testified that plaintiff paid $9825 for the goods and fixtures, paying $500 cash, and $1000 a few days later, plaintiff transferring to the sellers a house for $5000, with an encumbrance of $1640 thereon; that about $600 in cash was paid about three weeks later, and that notes were taken for the remainder of the purchase price. And the witness identified a bill of sale said to have been given by him and Mrs. Saffron to plaintiff, which was offered in evidence, and also an agreement entered into between the parties relating to the transaction. And the witness further testified that after plaintiff bought the stock of goods, plaintiff purchased from a wholesale dry goods company, in the City of St. Louis, some shoes and other articles "to fill in."

One Multin, who stated that he was a jobber in the dry goods business, testified that he examined the stock of goods in question when it was at the Florissant avenue store, prior to the fire, with a view to purchasing it. He

stated that it was "staple stock," in a merchantable condition; that he took an inventory thereof and offered plaintiff $8500 therefor, without the fixtures; that he intended buying it with a view to reselling it.

One Rosen, a tailor, testified that he was present and heard Multin offer $8500 for the stock, without the fixtures; that the witness estimated that the men's clothing in the stock, alone, was worth over $4000.

One Maurice Saffron, whose wife had been a partner with Deutch, as above mentioned, testified that he saw the stock of goods at the store prior to the fire; that he had had a little experience in the dry goods business; that he observed the quality of the goods, and that "it was good goods."

One Inselberg, a witness for plaintiff, testified that he was a tailor and cutter, having a place of business next door to that of plaintiff's store. He testified as to the character of the stock of goods, saying that it was "an ordinary stock of goods, salable and suitable for the neighborhood." And he testified that he "saw the place after the fire and the contents were destroyed from smoke, fire and water, back through the store, and the cases where the men's clothing was were a heap of ashes;" that nothing of value was left so far as he could see, either in stock or fixtures. And he stated that he would estimate the fixtures as worth $750 or $800, and that in his judgment the fair and reasonable value of the stock of goods was "around $12,500."

One Strathman, a witness for plaintiff, testified that he worked for Deutch while he owned the stock of goods on Florissant avenue, and later worked there for plaintiff up to the time of the fire; that the stock was a general stock of merchandise, consisting of staple goods, and "were in as good condition such goods should be in to be salable in retail stores;" that the actual cash value of the stock, exclusive of fixtures, was about $12,000, the fixtures being worth six or seven hundred dollars. And he further testified that he was at the place after the fire, and that "the damage was practically a total loss;" that

"the stock was all burned and water soaked." And this witness further testified that he and plaintiff left the store together about 8:30 on the night of the fire, and locked the store as they did on other nights; and that when he saw the store again the "contents were practically destroyed by fire."

Plaintiff, as a witness in his own behalf, testified as to his acquisition of the stock from Deutch, the details of which testimony need not be here set out; that prior to the purchase of the store he had been in the "scrap iron, machinery and metal business;" that he knew nothing as to how the fire was caused; that "everything was burned up by the fire there on the ground, ashes." And he testified that the actual value of the property was twelve or thirteen thousand dollars and the fixtures were of the value of $750.

On cross-examination plaintiff testified that he was born in Galicia, Austria, and in 1901 came from Brazil to St. Louis where he engaged in "the vegetable business," later going into the "junk business;" that prior to the purchase of this stock of goods he was "mostly in the junk business," but was for a time in the shoe repairing business that after the fire he returned to the junk business. He testified that he came to this country intending to become a citizen thereof; and it was stipulated that his "first citizenship papers" had been issued to him. In the course of his cross-examination he stated that he "did not sell gasoline, benzoin, coal oil or dynamite, and he had none of these explosives on his premises; that on the night of the fire which was Saturday night, he left the place about 8:30 and did not return until Monday morning.

Mr. Cullen, counsel for plaintiff, testified to the services rendered by him and his firm for plaintiff in connection with the suit, and that in his judgment $500 would be a reasonable attorney's fee therefor.

The policy was introduced in evidence..

Defendant introduced testimony showing that the fire was first discovered about two o'clock on Sunday morning, January 8, and that when the firemen reached the premises they found that the front show windows of

the store were out; that glass was scattered in front of the premises, that hats and other articles had been blown into the street. One of the firemen testified that in attempting to get at the fire with the "chemical line," he went to the rear of the building and "crawled in on hands and knees," and in so doing rolled over a five-gallon can which he turned over to a police officer. He said that he detected an odor of gasoline in this can; that when he found it, it was where the fire was burning, and was scorched. This can was an exhibit below. A police officer testified that he took this can into the alley, poured a small quantity of its contents into his hand and smelled it, and that it was gasoline. He said that he took this can to the police station Sunday morning.

There was testimony that the fire would burn on top of the water which was thrown into the store, as it ran on the floor; and that clothing in the store burned as though it had gasoline or some like substance upon it. Persons living in the neighborhood testified that during the night they heard a terrific explosion and that a violent fire at once broke out in the premises.

One witness, a young woman, testified that she lived a block from the store, "straight up the alley;" that shortly before the fire she saw, from her window, an automobile in this alley, and later saw two men carrying something between them which she thought was a can; that they came from the direction of plaintiff's store and put their burden into the automobile and drove away, and that a few minutes later she heard the fire engines going to the fire.

A captain of the fire department testified that he visited the place on the Monday morning following the fire, and that he saw a large can in the rear which contained about a quart of liquid which he thought was coal oil or benzoin.

The evidence shows that a representative of the defendant went to the premises a day or two after the fire and had certain photographs made which were introduced in evidence. This representative testified that

the stock appeared to him to be old, damaged and out of date; that he employed two young men connected with a wholesale dry goods company in the city to make an inventory thereof, and to undertake to value the stock at what it was reasonably worth before the fire. It appears that from what remained in the store after the fire, these young men undertook to make an appraisement of the original contents of the store, not including, however, anything which was "out of sight or in ashes." The paper prepared by them was introduced in evidence. It consists of a list of figures, each supposed to represent the value of a "lot" of goods, with no attempt to specify the various articles included therein. The value which they thus put upon all of the goods which they were able to identify, i. e., the value as before the fire, totaled $3048.59, exclusive of fixtures. One of these witnesses said that in making this appraisement some of the goods were "discounted as much as 200% (sic) from the original cost price;" while the other witness testified that some of the goods were "put at a discount of 50%." One of these witnesses said that it was "about the most dilapidated old stock" he had ever looked at, consisting of "hats and ladies coats that were out of date, coats and trousers that did not match, some odd shoes and old dry goods.

Defendant put in evidence the proof of loss furnished it by plaintiff. From this it appears, among other things, that during the brief period in which plaintiff conducted this store, his sales averaged about $10 per day.

The first assignment of error is to the action of the court in giving plaintiff's instruction No. 1. This instruction is as follows:

"The court instructs the jury that under the law of this State an insurance company is prohibited from taking a risk on any property in this State at a greater rate than three-fourths of the value of the property insured, and when an insurance company writes a policy for a certain sum it is precluded from asserting that the value of the property at the time the insurance is taken

out is not one-fourth more than the total amount of insurance, and in this case you should consider that the property insured was worth, at the time the policy was taken out, one-fourth more than the total insurance, to-wit, $8,000 and the only depreciation or lessening of the value of the property by sales, or otherwise, which you should allow is such as you believe occurred after the policy in suit was written." *

One complaint as to this instruction is that it authorized a verdict for plaintiff "without any finding for plaintiff upon vital questions in the case, such as measure of damages, absence of fraudulent oath and willful burning, under the issues of the case." We think that this contention is without merit. It will be noted that the instruction does not direct a verdict for plaintiff. While its verbiage may not be of the best, when analyzed critically, the purport of the instruction is to direct the jury as to the law respecting the measure of the recovery under section 7030, Revised Statutes 1909, then in force. It is not an instruction purporting to cover the whole case and directing a verdict.

It is insisted, however, that the instruction is erroneous for the reason that the statute, supra, upon which it is predicated, containing the "three-fourths valuation clause," is here inapplicable because of the defense interposed based on the alleged fraud of the insured. The statute, supra, provides that "no company shall take a risk on any property in this State at a ratio greater than three-fourths of the value of the property insured, and when taken, its value shall not be questioned in any proceeding." The fraud alleged in the answer is that the fire was caused by the willful and intentional act of plaintiff for the purpose of destroying the property and thereby cheating and defrauding this defendant, coupled with a defense of alleged false swearing in connection with the proof of loss. The fraud thus alleged is not fraud in the procurement of the policy. The effect of fraud in the procurement of the policy, in applying this statute, which was discussed in Farber v. Insurance Co., 191 Mo. App. 307, 177 S. W. 675, is not here involved. It is entirely clear that the

defendant was here precluded from asserting that the value of the property, at the time of the issuance of the policy, was less than four-thirds of the amount of the insurance. Plaintiff's instruction No. 1 is inaccurate in telling the jury to consider the value of the property as "one-fourth more than the total insurance;" for if the amount of the insurance is to be regarded as three-fourths of the value of the property at the time of the issuance of of the policy, then the value of the property at said time was, of course, four-thirds of the amount of the insurance. Consequently, to be correct, this instruction should tell the jury that the property is to be regarded as worth, at the time of the issuance of the policy, one-third more than the total insurance thereon. However, this inaccuracy is one in appellant's favor, and of which he has no right to complain.

Again, in connection with the giving of this instruction, it is said by appellant that it was error to permit a recovery as for a total loss, for the reason that there was evidence of substantial salvage. A careful perusal of all the evidence in the case has led us to the conclusion that the judgment should not be disturbed on this ground. From our statement of the facts, supra, it will be seen that the evidence adduced in plaintiff's behalf tended to show a total loss. Some of the evidence adduced by defendant may, perhaps, warrant the inference that there was salvage of some substantial value remaining after the fire. However, this inference, as we view the evidence, is not a necessary one, and hence not one which the jury was obliged to draw. It is true that two young men undertook, by an examination of what remained after the fire, to arrive at the value at the stock before the fire, and in this manner made up the partial inventory or appraisement mentioned above. But these men testified as witnesses, and neither of them undertook to testify as to the value, if any, of the wreckage; nor, indeed, did they state that what remained of the stock had any value. From what they examined in the wrecked store, they undertook to reconstruct, as it were, the original stock of goods and

put a valuation thereon, excepting only so much thereof as had been entirely obliterated by the fire, and hence was "out of sight." Though enough may have remained to enable them to form some idea of the characetr and value of the original stock—whatever weight may properly be given to an attempted appraisement of this sort—it does not appear that the articles which they examined were marketable or had any substantial value.

One contention is that from the photographs in evidence this court can see that substantial salvage remained in plaintiff's store. It is true that the photographs in the record show various articles lying about in the store. the whole being in great disorder and confusion. While some articles of merchandise may be recognized in these photographs, it is impossible to say that after the fire they were in such condition as to have any real value.

Again attention is called to the fact that plaintiff, in his proof of loss, made use of the word "salvage" in the expression, "schedule of salvage." In such proof of loss the schedule as to the stock of goods was divided into two items, one denominated "schedule of salvage" and the other, "estimated out of sight." And it seems clear that such use of the word "salvage" does not imply that salvage remained of substantial value. In such proof of loss plaintiff (as did defendant's appraisers) stated separately the original value, as he claimed, of that part of the stock which could be identified by what remained, making a separate item of that part which was physically destroyed in toto. And, it is evident that plaintiff, in his proof of loss, claimed that the item, "schedule of salvage," was a total loss.

We think that no prejudicial error was committed in giving this instruction.

## II.

Instruction No. 8, offered by the defendant, was refused as offered, but the court gave it after modifying it by the addition of the words which we italicize below. The instruction, as thus modified, is as follows:

"You are instructed that one of the questions submitted to you is whether the fire originated by any act, design or procurement on the part of the plaintiff, or through any evil practice done or suffered by his privity or with his consent. In deciding this question, the jury must take into account every fact and incident connected with the fire and subsequent transactions, as detailed in evidence before you, and decide according to what you consider the most probable conclusion. The rule in civil cases, like the present, is different from what it is in criminal cases. In criminal cases the question is as to guilt or innocence of a crime, and there the jury must be satisfied that the offense was committed beyond a reasonable doubt, by the person accused. In criminal cases, if any reasonable doubt remains in the minds of the jury, they are bound to give the accused the benefit of such doubt; but in civil questions like the present there is no question whether any crime has been committed The question in this case is merely a question of greater or less probability, and the jury in order to find a verdict for the defendant need not be satisfied of the complicity of the plaintiff in the burning in any other way, or with any different degree of satisfaction, than in the case of any other question in a civil case. And if in this case the jury are of opinion, from the evidence, that it is more probable that the burning of the property here involved, was brought about by the procurement of the plaintiff than that he was innocent of it, *according to the weight and preponderance of the evidence,* you must find the issue for the defendant."

Appellant complains of the modification of this instruction, urging that "where willful and intentional burning is in issue in a civil case it is the duty of the jury to return a verdict for defendant, if the jury be of the opinion, from the evidence, that it is more probable that the burning was brought about by the insured than that he was innocent of it."

We do not think that by adding to this instruction, as offered, the words italicized above, the court committed

error prejudicial to the appellant. While it is true that it was the province of the jury to reckon with the probabilities in the case, the defense of willful and intentional destruction of the property by plaintiff was an affirmative defense, as to which defendant carried the burden. And in order to find a verdict for defendant on this ground, the jury should be satisfied "that the weight · of the evidence preponderated in favor of the contention that plaintiff did burn or cause to be burned the property insured, and that the reasonable probability of the truth was in such conclusion." [See Rothschild v. Insurance Co., 62 Mo. 356.] In this connection see also State ex rel. v. Ellison, 268 Mo. 239, 187 S. W. 23.

· We accordingly rule this assignment of error against the appellant.

### III

Defendant offered the following instruction, which the court refused to give, namely:

"By mentioning 'the burden of proof' and 'preponderance of the evidence,' the court means merely to briefly express the rule of law, which is, that unless the evidence before you, in regard to facts necessary (under these instructions) to a verdict in favor of plaintiff, appear in your judgment more credible than the contrary evidence regarding said facts, then your verdict should be for the defendant."

Appellant complains of the refusal of this instruction; but obviously the instruction would not have furnished a proper guide to the jury as to what was meant by the terms "burden of proof," and "preponderance of the evidence," used in other instructions. Nor was it reversible error to fail to define these terms. [See Jones v. Durham, 94 Mo. App. 51, 67 S. W. 976.]

### IV

One assignment of error is predicated upon alleged improper remarks of plaintiff's counsel in argument to

the jury. It is unnecessary to set out at length the argument of plaintiff's counsel referred to in this connection, which, with the objections and rulings thereupon, occupies a number of pages in the abstract before us. It appears that in the course of such argument defendant's counsel interposed eight objections, the first seven of which were sustained. As to these objections which the court sustained, we need only say that since appellant did not request that the court go farther, by way of rebuking counsel or otherwise, there is now no room for complaint by appellant in that regard. The eighth objection, which the court overruled, was, we think, not well taken. In discussing the testimony that was adduced by defendant to show the willful destruction of the property by plaintiff, plaintiff's counsel said: "Will a man be branded, and his children after him be branded, until they go down to their graves, they had a dishonest father."

At this point the objection was made, which was overruled. Continuing, plaintiff's counsel added, "by such testimony as this." etc.

We do not think that this transcended the bounds of legitimate argument under the circumstances,—at any rate, not to the extent of warranting an appellate court in disturbing the judgment on this ground. In this connection it may be noted that, in regard to the defense that plaintiff was an alien enemy, plaintiff testified, among other things, that he had six children in this country; so that in thus indirectly referring to plaintiff's children, counsel did not go beyond the record.

## V.

The giving of instructions authorizing the jury to assess damages, and an attorney's fee, as for vexatious refusal on the part of defendant to pay, and the refusal of an instruction offered by defendant seeking to take this question from the jury, are here assigned as error. And we believe that the contention of appellant in regard to this matter is sound.

The statute involved, section 7068, Revised Statutes 1909, as amended in 1911 (Laws, Missouri, 1911, p. 282) now section 6337, Revised Statutes 1919, permits a recovery of damages, not exceeding ten per cent. of the amount of the loss, and a reasonable attorney's fee, if it appear from the evidence that the insurance company has vexatiously refused to pay the loss. This statute has many times been before our courts. It is a penal statute, and as such must be and is strictly construed. And it is well settled that a vexatious refusal to pay the loss, within the meaning of the statute, is not to be deduced from the fact alone that the verdict is adverse to the defendant. [See Non-royalty Shoe Co. v. Phœnix Assurance Co., 277 Mo. 399, 210 S. W. 37; Patterson v. Insurance Co., 174 Mo. App. 37, 1. c. 44, 160 S. W. 59.]

In Non-royalty Shoe Co. v. Assurance Co., supra, the Supreme Court approved the language of the opinion of the Kansas City Court of Appeals in Patterson v. Insurance Co., supra, as follows:

"And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty."

In the case before us we regard it as clear that the evidence failed to show that the refusal of the defendant to pay the loss was both willful and without reasonable cause, as the facts appeared to a reasonable and prudent person before the trial. It is true that there is evidence in the record that the defendant willfully and positively refused to pay the loss. Indeed a representative of defendant, in testifying, stated that defendant would resist payment "until the court's mandate says pay." But this alone is not sufficient to warrant the assessment of damages and an attorney's fee as for vex-

atious refusal to pay. It must appear that defendant had no reasonable cause for such refusal, in keeping with the rule stated above.

It is unnecessary to give a resume of the evidence touching the alleged willful destruction of the property by plaintiff; but we may say that we regard it as clear that there was substantial evidence, though circumstantial in character, tending to establish this defense. That question was one for the jury, and is now concluded by their verdict. But in view of the facts and circumstances present, as they were shown to have appeared to defendant at the time, we think that the only conclusion warranted by the facts is that defendant had reasonable cause to refuse to pay the loss on this ground, and hence was entitled to try out this issue before a jury without being penalized for so doing. We are of the opinion that "there was not in evidence any substantial facts upon which to base a finding of any penalty for vexatious refusal to pay the loss." [Non-royalty Shoe Co. v. Assur. Co., supra.]

The judgment will consequently be reversed, and the cause remanded, with directions to the circuit court to enter judgment for plaintiff for the sum of $4000, as of April 11, 1918, the date of the entry of the original judgment. It is so ordered. *Becker, J.,* concurs; *Reynolds, P. J.,* not sitting.