Joseph **MIELE**, a/k/a Joseph Cusumano, Appellant,

v.

**BOSTON INSURANCE COMPANY,** Appellee.

No. 16537.

United States Court of Appeals Eighth Circuit.

March 27, 1961.

Edward J. Lawson, of Friedman & Slonim, Clayton, Mo., filed brief and made oral argument for appellant.

John H. Cunningham, Jr., of Willson, Cunningham, McClellan & Gunn, St. Louis, Mo., filed brief and made argument for appellee.

Before WOODROUGH, VAN OOSTERHOUT and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

The judgment here appealed from adjudicated the issues and disposed of two cases duly consolidated for trial.

In No. 59 C 57, Boston Insurance Company sued Joseph Miele a/k/a Joseph Cusumano (hereafter referred to as Miele) and his wife Mary Miele, in the District Court for the Eastern District of Missouri, for a declaratory judgment of non-liability upon three fire insurance policies issued by it; one for a period of three years from October 3, 1957, issued to the defendants or either of them against loss and damage by fire in the sum of $10,000 to the building located at 8503 Natural Bridge Boulevard, St. Louis County, Missouri; one to Joseph Miele for a period of three years from October 3, 1957, against loss and damage by fire in the sum of $10,000 to the contents of the building; and one to Joseph Miele for a period of one year from January 24, 1958, against loss and damage by fire in the sum of $3,000 resulting from business interruption at the same premises. It was alleged in the complaint that the defendants were the owners of the building; that Miele was the owner of the contents; that on or about February 18, 1958, the building and contents were damaged by an explosion and fire and the business operations, which were carried on by Miele, were caused to cease and the resulting claims were made under the policies for damage to the building in the sum of $16,602.62; for damage to the contents in the sum of $9,258.21; and for loss by business interruption in the sum of $3,000; that the explosion and fire were of incendiary origin and intentionally set by defendant Miele for the purpose of endeavoring to collect the proceeds of the policies and thereby defraud the plaintiff; and that said facts are denied by defendants.

It was further alleged that each of the policies contained provisions among other things, that if the insured be guilty of

any fraud or false swearing in connection with any claim, whether before or after a loss, plaintiff shall have no liability to the insured in connection therewith, and also that the insured shall submit to examination under oath in connection with any claim asserted under the policies.

The defendant was so examined and was found guilty of fraud and false swearing in answers given to material questions relating to his claims; to wit, ownership of the property and business, knowledge of the cause of loss, connection of the defendant therewith and other matters not now relevant. Also that the policies were procured by Miele through fraudulent misrepresentation and concealment of material facts in that he falsely and fraudulently represented that he was an honorable honest business man owning and operating a legitimate and successful business venture and with a clean record in all respects; that the building was of the reasonable market value of $30,000 (there being two additional fire insurance policies of $10,000 each written on the building in the name of his wife by other companies); that the contents of the building were of the reasonable market value of at least $16,000; and that his business operations were profitable and were resulting in earnings and not losses.

That all of said matters were false and the truth was that Miele was not licensed to engage in the business being conducted in the building; that he was an ex-convict having a long criminal record of arrests and convictions for law violations of serious nature; that the building and contents were worth less than represented; and that the business conducted therein operated at a loss. That these matters were material to the risk and if plaintiff had known the true facts, it would not have issued either of the policies and since they were procured by fraud, they are void and unenforcible.

In No. 59 C 60, Joseph Miele sued Boston Insurance Company in the state court to recover the proceeds under the three policies for the same loss. Miele's action was removed to the United States District Court as there was federal jurisdiction by reason of diversity of citizenship and sufficient amount involved in both cases. The two cases were consolidated for trial and were tried before Judge Weber sitting without a jury. Mrs. Miele disclaimed interest and was dismissed as a defendant. Judge Weber made general findings on the issues in both cases in favor of the insurance company and against Miele, and filed a memorandum opinion embodying particular findings that Miele had participated in the burning of the insured property and had procured the policies by misrepresentation and fraud.

Declaratory judgment of non-liability on the policies was accordingly entered in the action brought by the insurance company and judgment of dismissal in the case brought by Miele. He appeals.

The contentions for reversal are (1) that there is not a scintilla of evidence that appellant participated in the alleged arson and (2) that the Court erred in its findings and conclusion that representations of appellant were fraudulent or material.

It appears from the evidence in accord with the findings of the Court that at about midnight on Monday, February 17, 1958, a violent explosion occurred in the premises at 8503 Natural Bridge, St. Louis County, Missouri, where appellant operated his tavern and restaurant. A filling station operator was working on a car across the street facing the tavern, who testified that the explosion was of such force that the roof on the east side of the building was raised upward as though it was hinged in the center and then settled down into the building which instantly became enveloped in flames of an orange color. Another eye witness, about three quarters of a block away, heard the "extra loud" explosion and said it was accompanied by a bright flash of yellowish fire. Police officers answering the fire alarm described finding glass and other objects blown to a distance of about a hundred feet. The night was so cold that the water from the firemen's hose froze in the ruins of the building

which were examined by county police officers the following morning. They found evidence of separate fires and behind the bar at two sites of burning, they found brown chemical bottles broken or partially broken which contained liquid that was analyzed as petroleum ether, described as being more inflammable and explosive than gasoline. Liquid that had not frozen was also sponged up from behind the bar of an insufficient quantity to be analyzed that smelled of petroleum ether. A gas company trouble shooter, who arrived at the fire before it was put out, saw a fire burning behind the bar with a blueish purple flame that he knew from his experience was not produced by burning gas. He also found that a valve or portion of a gas pipe had been unscrewed and removed, and was not in the debris. From examination of the threads on the end of the pipe, it was evident that it had not been broken off. The portion of the gas pipe that had been unscrewed, appeared to have been taken off recently and the threads around the end of the pipe showed no evidence of burning. The gas company had received calls prior to the fire that there was no heat in the premises, but the man who responded to the calls found nothing wrong with the gas lines. There were no gas leaks on the premises after the gas company man was there in response to the call. The portion of the gas pipe that had been removed was a part of the main fuel line leading from the meter to the gas heater in the premises.

The proof, that the explosion and fire were of incendiary origin, was so clear that no contention to the contrary was made to the District Court. The contentions for the appellant here are solely as to appellant's connection with the fire and as to his alleged fraud and misrepresentations.

■■ The evidence tending to support the Court's finding that appellant participated in setting the fire is circumstantial, as no witness testified to seeing him commit any act of incendiarism. It is firmly settled law in Missouri that in a civil action on an insurance policy, the defense of arson by the insured need be established only by a preponderance of the evidence and not beyond all reasonable doubt, and it may be established by circumstantial evidence. State of Missouri v. Ferrara, Mo.1958, 320 S.W.2d 540; Copeland v. American Central Ins. Co., 1915, 191 Mo.App. 435, 177 S.W. 820.

In addition to the proof of the incendiary origin of the explosion and fire, it appeared that appellant started the tavern and restaurant business on the premises in the spring of 1957 and had operated it for less than a year at the time of the fire. His independent certified public accountant testified that for the period from May 1, 1957, to December 31, 1957, he made an operating profit of $1191.00. In order to arrive at any profit, he had to assume that appellant had on hand at the end of the year merchandise inventory of $2322.00 as stated to him by appellant over the telephone, but if the inventory value was actually less there would have been a loss. There was practically no inventory of merchandise found at the time of the fire and appellant's testimony was that he bought some $300 or $400 of supplies that would be used up each week. Although the accountant showed a substantial net profit, from the standpoint of cash income from operations, appellant actually lost money and took no money out of the business. Despite the state of his business, four months before the fire, he obtained insurance in the amount of $16,000 on the building's contents consisting of fixtures that had cost only $9,500. In procuring the insurance, he represented that he was operating a successful business and that he was a reputable business man. On the trial he testified that he had been convicted and imprisoned for felonies. He was unable to pay the premiums for two policies written on a three year basis and had them reduced to a one year basis. The policy for $3,000 covering business interruption was procured one month before the fire. At that time he was behind in his payments on the fixtures; owed money to an electric sign company,

a hotel supply company and from time to time on his automobile; was behind in the payments on his home and was threatened with foreclosure. His wife was suing for divorce. His liquor license was in his wife's name and he could not procure one on account of his criminal record.

On the night of the fire the police questioned him and he made false answers about his insurance and said he did not owe money to anyone. The fire was on Monday night and the evidence was that on Mondays his tavern was closed, but it had been his custom to require his cook, Robert Searson, to return on Monday to sweep out the premises. On the Monday of the fire he excused Searson from returning to the premises and Searson did not return. It was also appellant's custom to buy the week's supplies on Monday and he testified to having done so on the Monday in question, but there were no supplies in the building at the time of the fire. A merchant with whom he dealt testified to seeing him come into his store on that day and go out without carrying anything. Appellant was the only one shown to have been on the premises on that day. He said he had locked up and left about six o'clock. He told the police he knew of no one who would have any motive for setting the fire and there was no evidence when the case was tried nearly a year later pointing to any other source of the fire than himself.

In summary, it appears in addition to the incendiary origin of the explosion and fire that appellant had strong motives for obtaining the insurance money; that he had over insured; that the period was short between procurement of insurance and happening of the fire; that his business operations were not successful; that he had numerous debts including one where foreclosure was threatened; that he was present alone in the tavern and had opportunity to set the fire; that he was the last person shown to have left the premises; that he changed his custom and directed his helper not to report for work on the day of the fire; changed his custom of buying his week's supplies on Mondays and bought nothing on the day of the fire; and that he made untruthful answers when questioned about material matters.

As to the fraudulent means by which he procured the insurance, appellant admitted that he had told the insurance agent that he was "operating a successful business making money" and that he was a "reputable business man."

The District Judge who saw and heard the witnesses referred in his opinion to Copeland v. American Cent. Ins. Co., 1915, 191 Mo.App. 435, 177 S.W. 820, and quoted its reference to what the evidence required could be;

> "Anything, by way of legitimate inference from facts shown in evidence, which satisfies the mind and conscience that the acts charged were perpetrated, and that the plaintiff was a participant therein, * *."

He held the evidence against appellant was of that character. It appears that under the Missouri law, which is applicable to this case, we could not reverse a criminal conviction for arson if it was based on such evidence against a defendant as was adduced against appellant in this case. In the late case of State of Missouri v. Ferrara, 1958, 320 S.W.2d 540, 546, the Supreme Court on the basis of evidence comparable with the evidence here, declared:

> "In the light of the facts established the corpus delicti, defendant's opportunity and presence of motive, and his disclaimer at the fire, when questioned, of having in excess of $3,000 insurance in force on the stock and equipment, makes out as strong a case as in Dworkin [State v. Dworkin, 307 Mo. 487, 271 S.W. 477], supra, on the authority of which, if no other, we feel impelled to, and do hold that the question of defendant's agency in the crime was one for the determination of the jury, * * *." 320 S.W.2d loc. cit. 546.

Appellant's affirmative misrepresentation as to his business making money, as to the character or moral risk involved and to the overinsurance related to material matters rendered the insurance obtained unenforceable. Buck v. Stuyvesant Ins. Co. of City of New York, 1922, 209 Mo.App. 302, 237 S.W. 840; Smith v. American Automobile Ins. Co., 1915, 188 Mo.App. 297, 175 S.W. 113.

The following cases cited for appellant on his claim of the insufficiency of the evidence against him concerning his agency in the alleged arson have been considered, but are deemed distinguishable: Hanover Fire Ins. Co. of N. Y. v. Argo, 5 Cir., 1957, 251 F.2d 80; Miller v. Firemen's Ins. Co., 1928, 206 Mo.App. 475, 229 S.W. 261.

We find that the judgment appealed from is supported by the evidence and is not erroneous. It is in all respects

Affirmed.