**BENNCO SALES & SALVAGE, INC., d/b/a Bennco Warehouse Foods, Plaintiff–Appellant,**

v.

**GULF INSURANCE COMPANY, Defendant–Respondent.**

No. 15286.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 6, 1988.

Motion for Rehearing and/or Transfer Denied Sept. 22, 1988.

Application to Transfer Denied Nov. 15, 1988.

Daniel T. Moore, L. Joe Scott, Daniel T. Moore, Poplar Bluff, for plaintiff-appellant.

James E. Spain, Samuel P. Spain, Hyde, Purcell, Wilhoit, Spain, Edmundson and Merrell, Poplar Bluff, for defendant-respondent.

HOGAN, Judge.

Plaintiff Bennco Sales and Salvage, Inc., doing business as Bennco Warehouse Foods, Inc., (hereinafter Bennco) brought this action on a fire insurance policy issued by defendant Gulf Insurance Company. The policy insured a building occupied by Bennco and the contents thereof against destruction by fire. A fire loss occurred on January 5, 1986. Proof of loss and demand for payment were made by Bennco, but Gulf refused payment. Bennco then brought this action in two counts and Gulf pleaded the defense of arson. Upon trial, defendant Gulf had a verdict and Bennco appeals. Two points have been briefed. The first is that Instruction No. 8, which submitted the defense of arson, was not supported by substantial evidence. The second point is that the word "procure," which was used in Instruction No. 8, should have been defined for the jury.

The general rule in insurance cases is that a plaintiff makes a prima facie case of coverage by establishing issuance and delivery of the insurance policy, payment of the premium, a loss caused by a peril insured against, notice of loss and proof of loss given to the insurer as the policy requires. *Nixon v. Life Investors Ins. Co. of America,* 675 S.W.2d 676, 679 (Mo.App. 1984). When the insurer relies on an exclusion, such as arson, it has the burden to prove its defense. *Nixon v. Life Investors Ins. Co. of America,* 675 S.W.2d at 679; *Francka v. Fire Ins. Exchange,* 668 S.W. 2d 189, 190 (Mo.App.1984). The parties agree that Bennco made a prima facie case. Therefore, the very narrow question to be addressed by the court is whether the evidence, taken most favorably to the defendant, warrants the inference that the fire originated by the act or procurement of the plaintiff.

The evidence bearing on this question was that, beginning in 1983, Bennco dealt in "distress type merchandise." It purchased a fire insurance policy from the defendant in 1983. The policy had an annual renewal date of January 7.

Throughout its existence, Bennco was in financial difficulty. In the last half of 1985, business took a sharp turn for the worse. Total sales for the first 6 months of 1985 were $400,000, but during the last six months of that year the volume of sales dropped to $141,602. Bank deposits fell from $40,000 in July of 1985 to $7,500 in September of that year.

By August 1985, Bennco's checks were being dishonored and its suppliers had begun to demand cashier's checks or cash. Bennco's financial condition became a source of concern to Jerry Bennett, who was the manager of the business. Bennett had been contacted by the prosecuting attorney because Bennco's checks had been dishonored.

By the end of 1985, Bennco had fallen behind in payment of its rent, utilities and taxes. The public utility was threatening to discontinue service; its landlord and the taxing authorities threatened legal action of one sort or another. By the end of 1985, Bennco was completely insolvent.

On Sunday, January 5, 1986, the Bennco warehouse was extensively damaged by fire at approximately 10:30 p.m. Mr. Bennett had been in the building earlier to check the refrigerator units, and had then returned to his home at Dexter, Missouri. Bennett was notified of the fire by his brother. When he went back to the site of the fire, Bennett found that the building had been damaged by several fires, some of which had the appearance of having been set.

Donwell Clark, a criminal investigator for the City of Poplar Bluff, arrived at the warehouse as soon as the fire had been put under control. Clark found several fires and what he called "accelerants." As we understand his testimony, Clark concluded the fire was an incendiary fire. It was finally stipulated by the plaintiff that "somebody set the fire. . . ."

The defense of arson, or intentional burning by the insured, was submitted to the jury by Instruction No. 8, which read as follows:

"Your verdict must be for defendant if you believe plaintiff, by one of its officers, intentionally procured the destruction of the premises mentioned in the evidence by fire."

The plaintiff does not object to the *form* of the instruction; the substance of the plaintiff's complaint is that the evidence does not warrant the conclusion that Bennco intentionally caused or procured the fire. Bennco argues that *Garrison v. United States Fidelity & Guaranty Co.*, 506 S.W.2d 87 (Mo.App.1974), sets a standard by which the sufficiency of the evidence must be judged. Counsel purports to find nine "elements" which tended to prove the defense of arson in *Garrison* and contends that only one of those elements is present in this case.

■ Although we agree that proof of the insured's culpability was very strong in the *Garrison* case, we do not interpret that precedent as Bennco does. As noted in *Garrison*, 506 S.W.2d at 88, this court does not weigh the evidence in a jury-tried case. In an insurance case, the defense of arson may be established by circumstantial evidence and need only be shown by a preponderance thereof. *Ferguson v. American Family Mut. Insurance Co.*, 566 F.Supp. 1090, 1093 (E.D.Mo.1983). The insurer's burden of proof and the quantum of evidence required were addressed by our colleagues at St. Louis many years ago in *Miller v. Firemen's Ins. Co.*, 206 Mo.App. 475, 493, 229 S.W. 261, 266 (1921). In *Miller*, the court approved an instruction which advised the jury, in pertinent part:

" . . . The question in this case is merely a question of greater or less probability, and the jury, in order to find a verdict for the defendant, need not be satisfied of the complicity of the plaintiff in the burning in any other way, or with any different degree of satisfaction, than in the case of any other question in a civil case. *And if in this case the jury are of the opinion from the evidence that it is more probable that the burning of the property . . . was brought about by the procurement of the plaintiff than that he was innocent of it, according to the weight and preponderance of the evidence, you must find the issue for the defendant.*" (Emphasis added.)

*Miller v. Firemen's Ins. Co.*, 206 Mo.App. at 492, 229 S.W. at 266. Otherwise stated, the trier of fact is entitled to draw legitimate inferences from the facts shown in evidence. *Cf. Rallo v. Northwestern National Insurance Company*, 238 F.Supp. 228, 230 (E.D.Mo.1965). The evidence was sufficient to warrant the inference that plaintiff had caused the insured property to be destroyed by incendiary burning.

■ Bennco further asserts that the word "procure," used in Instruction No. 8, should have been defined for the jury. The general rule followed by our courts is that the meaning of ordinary words, when used in their usual or conventional sense, need not be explained or defined to the jury.

*Thompson v. City of Lamar*, 322 Mo. 514, 543, 17 S.W.2d 960, 973 (1929). The word "procure" was not used in a peculiar or technical sense, and we find no error in the trial court's failure to define the word "procure."

We find no error in any respect urged in this court and accordingly, the judgment is affirmed.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.