**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Plaintiff,**

v.

**Walter and Teresa FLEMING, Defendants.**

**No. S87–0222C.**

United States District Court, E.D. Missouri, Southeastern Division.

Aug. 3, 1990.

Russell F. Watters, Robert H. Pedroli, Jr., Brown, James & Rabbitt P.C., St. Louis, Mo., for plaintiff.

Stephen E. Walsh, Summers, Cope & Walsh P.C., Poplar Bluff, Mo., for defendants.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff Nationwide Mutual Fire Insurance Company (Nationwide) initiated this declaratory judgment action wherein plaintiff has requested this Court to declare the rights of the parties under a certain policy of insurance with respect to fire claims made by Walter Fleming and Teresa Fleming. Defendants counterclaimed for the loss occasioned by the fire. Plaintiff's complaint proceeded to trial and was tried before this Court sitting without a jury on March 15, 1990. The Court, having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulation of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52.

### FINDINGS OF FACT

Plaintiff is an Ohio insurance corporation which maintains its principal place of business in the State of Ohio. Defendants are Missouri citizens and residents. The amount in controversy exceeds the jurisdictional requisite, exclusive of interest and costs.

Plaintiff issued an insurance policy bearing policy number 79 24 MP 886861 on November 18, 1986, with effective coverage dates of November 18, 1986 to November 18, 1987. On February 5, 1987 a fire occurred at the insured premises located at Route 1, Box 298, County Road 654, Broseley, Missouri. The defendants had recently purchased the premises on October 14, 1986 by General Warranty Deed from previous owners Leslie and Betty Armour.

Subsequent to the fire, defendants submitted a claim for fire damage to the building and its contents in the sum of $84,-591.50. Nationwide denied the fire claim primarily on the basis of (1) the intentional nature of the fire; (2) misrepresentations concerning the amounts of the claim and dealings the defendants had with Leslie and Doug Armour; and (3) misrepresentations concerning the loss history contained in defendants' application for insurance. After denying defendants' claim, plaintiff paid the mortgagee of the real estate, Southern Missouri Savings and Loan, $21,-051.70 pursuant to the mortgage clause of said policy on the property.

Defendants were unemployed and had no source of income when they purchased the house in October 1986. They did not have a bank account, either checking or savings. They claim, however, that when they purchased the house from Leslie and Betty Armour, they had $18,000.00 in cash which they stored in a small personal portable safe. They apparently paid the Armours $9,000.00 in cash for the down payment, despite the fact that defendants' employment history over the preceding years shows little consistent income. Defendants apparently spent all but $900.00 of the remaining $9,000.00 from the time they purchased the house to the time of the fire.

Defendants bought the house from Leslie and Betty Armour, and the Court finds that the circumstances surrounding the sale of the house are highly suspicious. Leslie Armour had last lived at the residence apparently in July 1986. He had been having problems making the house payments on the premises. When defendants purchased the house, they never notified the bank holding the mortgage. The Armours had a loan with Southern Missouri Savings and Loan. When defendants purchased the home, they "assumed" the loan. The loan assumption was an oral agreement between the Armours and defendants, and the bank was unaware of it. Teresa Fleming testified that she paid the Armours $320.00 per month, which they in turn paid to the bank. Thus, after defendants purchased the home, Leslie Armour continued making the payments to the mortgage holder. All transactions were apparently made by cash with no receipts. Furthermore, defendants agreed to pay $44,000.00 for the dwelling with no appraiser, no real estate agent, no bank and no knowledge or concern for the value of the property.

Prior to the fire, defendants lost two automobiles. One was lost in an alleged accident on August 16, 1986, and another in an alleged fire on February 2, 1987. Both losses were classified as unusual and suspicious by the state troopers who investigated the incidents. At the time of the losses, defendants thought both vehicles were insured, but the defendants' insurance had been cancelled apparently due to poor loss history. Even though both vehicles were destroyed, defendants still owed payments of $179.00 per month for the vehicles, again with little or no source of income at that time.

Defendants were close friends and associates with Leslie Armour and his son Doug Armour. Leslie and Doug Armour had previous involvement in arson fraud conspiracy in the Butler County area. Walter Fleming testified in his deposition that prior to the fire at his house, he had no knowledge of the Armour's past alleged involvement in arson conspiracy which was similar in style to the Fleming fire. Teresa Fleming, however, not only knew about the allegation, but she testified that Leslie Armour was arrested at defendant Walter Fleming's mother's home. Teresa Fleming further stated that Walter Fleming was told about this incident by his mother before defendants even purchased the Broseley home.

Walter and Teresa have had marital problems and have lived apart in the past. At the time of the fire, however, they were living together. Subsequent to the fire, in May 1987, Teresa had an affair with W.A. Freeman. Freeman testified that Teresa told him that she heard Walter and the Armours discussing burning the house to get the insurance proceeds. She was living with her husband then, but left him. She returned only on the promise that he not burn the house. Walter agreed, they reconciled, and shortly thereafter the house burned. Teresa Fleming denies telling W.A. Freeman that she or her husband ever discussed burning the house with the Armours. The Court finds witness Freeman's testimony to be more credible, particularly in light of the existence of a motive for defendant Teresa Fleming to fabricate, which this Court finds to be substantially greater than any motive Freeman may have had to fabricate.

Defendants were the only ones present at the time the fire started at approximately 3:00 a.m. on February 6, 1987. Defendants had the only keys to the dwelling.

This court admitted into evidence the deposition of William Bruxton. Bruxton has been a cause and origin fire investigator since 1966. Prior to doing private investigations, he spent ten years as a fire arson investigator for the Illinois State Fire Marshall's Office. Bruxton is currently employed by Pyr–Tech, which is a licensed private detective agency that deals primarily in fire investigation work. The majority of Pyr–Tech's business derives from the insurance industry requiring origin and cause examinations. Mr. Bruxton testified that he believed the cause and origin of the fire that occurred at defendants' home to be arson. He concluded that someone set a fire around the electricity panel box to make it appear as an electrical fire. He stated, however, that the electricity was off at the time of the fire. And, coincidentally, the children, who normally sleep in the room where the fire originated, were sleeping in the other room with their mother the night of the fire. Defendants did not present any contradictory evidence as to the source of the fire. The Court finds,

therefore, that the origin of the fire was of an incendiary nature.

Defendants' application for insurance was filed November 15, 1986. In that application defendants made material misrepresentations on the application of insurance with regard to questions concerning prior insurance losses due to the fire. When defendants submitted the application to plaintiff, the signed application represented and warranted that defendants had no prior losses within a five-year period. Defendants, however, had submitted two serious insurance claims less than twelve months prior to the completion of the Nationwide application. One of those claims specifically involved a fire loss which was expressly asked for in the application. The misrepresentations on the policy were material to the plaintiff issuing the policy. A representative of plaintiff testified that the insurance policy would not have been issued had plaintiff known of defendants' prior losses.

## CONCLUSIONS OF LAW

■ This Court has jurisdiction pursuant to Title 28 U.S.C. § 1332 due to the diversity of citizenship between the parties and an amount in controversy in excess of the jurisdictional requisite. Thus, the substantive law of Missouri applies under the circumstances of this case.

■ It is firmly settled in Missouri that in a civil action on an insurance policy, the defense of arson by the insurer need only be established by a preponderance of the evidence and not beyond a reasonable doubt. *Thomure v. Truck Insurance Exchange,* 781 F.2d 141, 142 (8th Cir.1986). There are four elements the insurer must establish by a preponderance of the evidence in order to establish that the fire was set or caused to be set by the defendants. The elements are: (1) the incendiary nature of the fire; (2) motive on the part of the insured to set the fire; (3) opportunity for the insured, or someone acting on the insured's behalf, to set the fire; and (4) inculpating circumstances which are relatively strong. *Thomure,* 781 F.2d at 142; *Harris*

**1000**

*v. Zurich Ins. Co.,* 527 F.2d 528, 530 (8th Cir.1975).

■ Direct proof of arson is seldom available, so courts have recognized that it can be established by circumstantial evidence. *Brown v. J. C. Penney Casualty Co.,* 649 F.Supp. 22, 24 (E.D.Mo.1986); *Bennco Sales & Salvage v. Gulf Ins. Co.,* 759 S.W.2d 336, 338 (Mo.App.1988). The fact that the evidence is circumstantial does not militate against a judgment that the fire was incendiary in origin and was attributable to the insured so long as the evidence is substantial. *Boone v. Royal Indemnity Co.,* 460 F.2d 26, 29 (10th Cir. 1972). The court is entitled to legitimate inference from facts shown in evidence which satisfies the mind and conscience that the acts charged were perpetrated. *Bennco,* 759 S.W.2d at 338; *Rallo v. Northwestern Nat'l Insurance Co.,* 238 F.Supp. 228, 230 (E.D.Mo.1965).

■ The Court finds that in the instant case the evidence shows by a preponderance of the evidence that the Flemings set the fire to their home, or caused the fire to be set. First, Mr. Bruxton testified that the fire was of an incendiary origin.

■ Second, the Flemings had a motive to set the fire. They were in financial difficulty at the time the fire occurred. They had no steady source of income. They owed $320.00 per month in house payments. They still owed $179.00 per month for two cars that were both destroyed. At the time of the fire they only had $900.00, which had to provide for the Flemings and the three children. Financial difficulty is sufficient to establish a motive for arson. *Harris v. Zurich Insurance Co.,* 527 F.2d 528, 530 (8th Cir.1975); *Ferguson v. American Family Mutual Insurance Co.,* 566 F.Supp. 1090, 1092 (E.D.Mo. 1983).

■ Defendants had the opportunity to set the fire. They were in the house at the time of the fire. When the insureds are the last to have access to the burned home, it can be assumed that they were responsible for a fire of incendiary origin. *Don Burton, Inc. v. Aetna Life & Casualty*

*Co.,* 575 F.2d 702, 707 (9th Cir.1978); *Harris,* 527 F.2d at 530; *Boone v. Royal Indemnity Co.,* 460 F.2d 26, 28 (10th Cir. 1972); *Miele v. Boston Insurance Co.,* 288 F.2d 178, 181 (8th Cir.1961).

Last, there are other inculpating circumstances which are relatively strong. The circumstances surrounding the transaction wherein the Armours allegedly sold the house to the Flemings were highly suspicious as the Court set forth in its findings of fact. Further, the Flemings were close friends with the Armours who appear to have had some prior involvement with arson conspiracy. There was also testimony that Walter Fleming discussed burning the house with the Armours. Finally, defendants had two prior insurance losses. Two cars were totally destroyed under suspicious circumstances within a year of the fire at their house.

The evidence, with permissible inferences, shows arson, ample motive, and opportunity on the part of the Flemings, as well as inculpating circumstances which are relatively strong. *Harris,* 527 F.2d at 530. Accordingly, the Court concludes by a preponderance of the evidence that the Flemings set the fire or caused the fire to be set that destroyed the house at Route 1, Box 298, County Road 654, Broseley, Missouri, on February 5, 1987. Thus, Nationwide should have judgment against the Flemings in this action. Judgment will be entered accordingly.

■ Plaintiff raised an alternative ground for judgment in its favor contending that defendants misrepresented a material fact on their application for insurance. As the Court has already determined that judgment will be entered in favor of plaintiff, it need not reach this issue. Nonetheless, the Court finds that defendants did make material and false statements in their application for insurance with Nationwide. Thus, the insurer would be entitled to void the policy. *Prudential Property and Casualty Insurance Co. v. Cole,* 586 S.W.2d 433 (Mo.App.1979). Finally, in light of the foregoing memorandum, the Court finds that defendants must necessarily fail in

their counterclaim for the loss occasioned by the fire.