Philip W. McCREERY,
Plaintiff–Appellant,

v.

CONTINENTAL INSURANCE COMPANY, Defendant–Respondent.

No. 16298.

Missouri Court of Appeals,
Southern District,
Division Two.

April 6, 1990.

Motion for Rehearing or to Transfer
Denied April 26, 1990.

Brian P. Taylor, Bruce Taylor, Taylor & Taylor, Neosho, for plaintiff-appellant.

Jon Dermott, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendant-respondent.

FLANIGAN, Presiding Judge.

Plaintiff Philip McCreery brought this action to recover under the fire insurance provisions of a policy issued to him by defendant Continental Insurance Company. McCreery's losses stemmed from a fire which occurred on November 29, 1987, and destroyed his residence in rural Newton County and most of its contents. The petition sought $102,600 for loss of the house

and its contents, loss of trees and shrubs, the expense of debris removal, and "loss of use." The petition also sought penalties and attorneys' fees for the alleged vexatious refusal of Continental to pay the losses.

Continental's answer alleged that McCreery's losses were due to his conduct in causing or procuring the cause of the November 29 fire. The answer also pleaded that McCreery had violated certain policy provisions dealing with misrepresentation and intentional concealment of material facts.

A jury was waived and the action was tried to the court. Prior to the commencement of the one-day trial, defense counsel invoked Rule 73.01(a)(2),[1] by requesting findings of fact and grounds for the decision. After both sides had presented evidence and rested, the court stated, "Due to all of the circumstantial evidence and all of the witness testimony in this case, I am compelled to the conclusion that the plaintiff has had some complicity in this arson. Accordingly I am going to rule the issues on the petition in favor of the defendant."

After that statement was made, colloquy ensued between the court and counsel. Defense counsel had earlier provided the court with a 7–page document containing 39 "findings of fact" and 6 "conclusions of law." The court stated, "I do adopt these proposed findings of fact and conclusions of law submitted by the plaintiff (sic) with some changes which I have stricken out and changed." The court then stated that he was amending findings 12, 20, 21, 29 and 32 in certain particulars, and entered judgment against McCreery and in favor of Continental. McCreery appeals.

In general, McCreery contends that the trial court erred: (a) in adopting certain findings of fact because they were not supported by the evidence; (b) in considering evidence concerning a "voice stress test" administered to McCreery during the investigation of the November 29 fire and in considering evidence of McCreery's refusal to take a lie detector test; and (c) in enter-

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R.

ing judgment for defendant in that when the matters complained of in (a) and (b) are eliminated, the remaining evidence is insufficient to show that McCreery "was somehow implicated in this fire loss." McCreery's brief says, "In this case we have clear evidence of arson and not much else."

In November 1987, two fires occurred at McCreery's residence. The first fire occurred on Sunday, November 22, but the damage was minor. The second fire, from which this action arose, occurred on the following Sunday, November 29. Evidence was introduced concerning both fires and their respective aftermaths.

McCreery testified that on Sunday, November 22, he left his home 5 miles west of Neosho to visit Wilbur LeMaster who lived 10 or 12 miles east of Neosho. LeMaster is the father of McCreery's deceased wife. McCreery testified that he arrived at LeMaster's house at 6 a.m. and returned to his own home around 8 or 8:30 a.m. When he opened his garage door he discovered smoke in the house. He ran to the home of his neighbor, Tom Powers, and told Mrs. Powers that his house was on fire. He asked her to call the fire department and the sheriff.

McCreery said that he had left his house unlocked. On the stove McCreery found a globe containing charcoal lighter. McCreery had kept the globe in the kitchen cabinet and his can of charcoal lighter had been kept in the garage. Some of the charcoal lighter was "missing." The first fire was not extensive and damage was confined to smoke damage.

McCreery testified that on November 29 he arose at 5:30 a.m., "shaved and washed," and left his home about 5:40 a.m. He stopped at a convenience store to have a cup of coffee and then drove to LeMaster's house where he spent 30 minutes. McCreery then went to his muffler shop in Neosho and checked the mail. Upon his return to his home, he "saw all the fire trucks." McCreery gave a recorded statement, on November 29, to Captain Dwayne Lasiter of the Neosho Fire Department.

On cross-examination, McCreery testified that he did not take "a change of pants" to the home of his girl friend Ramona Dilday between the first fire and the second fire. At the time of the second fire, his 1987 Cadillac and his 1987 pickup were at his muffler shop, and McCreery had driven an older pickup to see LeMaster.

McCreery admitted that in a sworn statement and in his deposition he had stated that he had not purchased gasoline at the Pump 'N Pantry, a convenience store "catty-cornered" from his shop in Neosho, "to take home in a container." According to McCreery, he locked his house before leaving it on the morning of the second fire and he alone had keys to the house.

McCreery testified that he had told Captain Lasiter that he visited LeMaster every Sunday in November 1987. There was testimony from LeMaster that McCreery visited him on Sunday, November 22, and Sunday, November 29, but did not do so on the preceding Sundays in November.

McCreery admitted that it was possible that he told Captain Lasiter immediately after the second fire that McCreery was "doing fine in his business." According to McCreery's income tax returns, McCreery had net business losses of $5,724 in 1985, $22,945 in 1986, and $44,906 in 1987.

McCreery's witness Richard Ebert, a claims adjuster who investigated the two fires on behalf of Continental, testified, on cross-examination, that McCreery underwent a voice stress test administered by the Miami, Oklahoma Police Department, and that the test "indicated some responsibility on the part of McCreery." He also testified that McCreery was asked to take a lie detector test and refused to do so.

Defense witnesses included Michael Goldsworthy, Bryce Toler, Herbert Schmidt, Darlene Bacon, William Ziers, Kelly Yates, Linda Frossard, Dwayne Lasiter, Pat Stuart and Ramona Dilday.

Michael Goldsworthy, a lieutenant in the Neosho Fire Department, testified that he investigated the first fire on November 22. "Something on the stove had broken and spilled. McCreery told us it was a globe off the back porch and showed us in the

cabinet where he normally kept the globe. McCreery said he thought the globe contained some lighter fluid for a barbecue grill and showed us out in the garage where he kept his lighter fluid and told us approximately how much was missing. I thought it was a little strange. I don't know how much lighter fluid I use out of my barbecue from one time to another."

Goldsworthy also testified that the first fire "was arson." He said it was unusual for "the globe and the charcoal lighter to come from the premises. Normally if someone breaks in and tries to start a fire they will bring something with them. It is unusual for a person to come to premises he intends to burn without any apparatus to burn it."

Goldsworthy also testified that, in the presence of McCreery following the first fire, several firemen talked about the use of charcoal lighter instead of gasoline. They said that although charcoal lighter is flammable it is slow burning and they thought it was strange that somebody would set liquid on a stove and let it burn instead of just pouring gasoline in the hallways and lighting it. "Usually they want to use something that's fast."

Bryce Toler, a Newton County deputy sheriff, testified that he investigated both fires. He said that on November 22, according to McCreery, the house was locked when McCreery left. Toler found no signs of a forced entry. No car was in the attached garage. After the second fire, Toler testified that in a chest of drawers in the master bedroom they found a pair or two of socks, a pair of underwear, and a handkerchief. McCreery said he had last done his laundry two days earlier.

On November 29, at 6 or 6:10 a.m., Herbert Schmidt, a passing motorist, saw McCreery's house "engulfed" in flames. The fire was coming out the windows and the roof. Schmidt went to the house of the nearest neighbor and "beat on the door and made a lot of racket and woke them up." A man came to the door and "they made a telephone call."

Darlene Bacon testified that she lived the first house south of McCreery and that on November 29, at 6:10 or 6:15 a.m., someone knocked at the door and her husband answered it. There was shouting at the door and she called the fire department.

William Ziers, an investigator for the state fire marshal, investigated the second fire. He arrived at the scene at 8:45 a.m. on November 29, and talked with McCreery. Ziers testified that the fire was incendiary in origin, a fact which is conceded by both sides. He said that gasoline could have been used to set the fire. Ziers, who had investigated around 1,000 fires, testified that in his opinion it would take "from 30 minutes to two hours for a fire of this size, the burn pattern that I found, to burn through the roof." He said that two gallons of gas, and probably less, would be sufficient to cause the burn pattern.

Kelly Yates, an employee of the Pump 'N Pantry, testified that she told Captain Dwayne Lasiter of the Neosho Fire Department that one time prior to November 29, 1987, McCreery bought gasoline "in a can." She told Lasiter, "that's the only time I can recall McCreery purchasing gas in a can." Yates commenced working at the Pump 'N Pantry in August 1987.

Linda Frossard, who worked at the Pump 'N Pantry from November 1986 to August 1987, on the morning shift, testified that during that period McCreery did not come in and buy gas in an open container.

Captain Dwayne Lasiter, of the Neosho Fire Department, testified that he had investigated fires for several years. He said that two gallons of gasoline would be adequate to start the second fire, and that the burn time of the second fire was anywhere from "30 minutes to an hour." He also testified that Kelly Yates told him that McCreery purchased gasoline in a can, a "small container," one time. Lasiter's report, received into evidence without objection, quoted Kelly Yates as saying she could not remember if that happened before or after the first fire, "but around that time." In a statement given shortly after the second fire, McCreery said on the only times he bought gas at the Pump 'N Pan-

try he put it directly into the vehicle he was driving.

Lasiter also testified that after the second fire, "we looked into the dresser drawer in the master bedroom and found a lack of underclothing." McCreery testified that he used the master bedroom.

McCreery told Lasiter that McCreery "had no idea who might have reason to do this [set the second fire]." He also said that he asked McCreery if his business was doing any good and McCreery responded, "Yes, you bet. I don't have no problem with nothing."

On cross-examination by McCreery's counsel, Lasiter stated that, in his examination of the premises after the second fire, "there was a lack of underclothing. The lack of underclothing was something that was given serious consideration in the investigation. I have seen a situation where somebody may burn their house but take their underclothing out."

Criminal investigator Pat Stuart of the Neosho Police Department testified that on December 1, 1987, he interviewed LeMaster, who told him that McCreery usually kept the Cadillac at his house but that on the date of the second fire the Cadillac was at McCreery's shop. He also quoted LeMaster as saying that McCreery was at LeMaster's house on the morning of both fires but had not been there in several weeks before that. Wilbur LeMaster, by deposition, testified that the information he gave Stuart on December 1 was accurate.

Ramona Dilday testified that she lived in Neosho and was dating McCreery in November 1987. She said she had in her possession clothes which McCreery gave her after the first fire. "McCreery gave me some shirts and pants to keep."

Catherine Powers, as a rebuttal witness for McCreery, testified that on the morning of November 29 her husband got out of bed and said, "My God, Phil's house is on fire," and she saw the "fire coming out of the roof."

■ On this appeal of a court-tried case, the judgment of the trial court "will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976). The power of this court to set aside the judgment on the ground that it is against the weight of the evidence should be exercised, "with caution and with a firm belief that the judgment is wrong." *Id.*

■ The burden was upon defendant Continental to prove its defense of arson. *Thomure v. Truck Ins. Exchange*, 781 F.2d 141, 142 (8th Cir.1986); *Bennco Sales & Salvage v. Gulf Ins. Co.*, 759 S.W.2d 336, 337 (Mo.App.1988); *Francka v. Fire Ins. Exchange*, 668 S.W.2d 189, 190 (Mo.App. 1984). The defense may be shown by circumstantial evidence, *Thomure v. Truck Ins. Exchange*, supra, at 142; *Miele v. Boston Insurance Company*, 288 F.2d 178, 180 (8th Cir.1961); *Ferguson v. Am. Family Mut. Ins. Co.*, 566 F.Supp. 1090, 1093 (D.C.Mo.1983); *Bennco Sales & Salvage v. Gulf Ins. Co.*, supra, at 338, and the quantum of proof required to support the defense is the preponderance of the evidence. *Thomure v. Truck Ins. Exchange*, supra, at 142; *Miele v. Boston Insurance Company*, supra, at 180; *Ferguson v. Am. Family Mut. Ins. Co.*, supra, at 1093; *Bennco Sales & Salvage v. Gulf Ins. Co.*, supra, at 338.

■ The fact finder is permitted to consider "a broad range of circumstantial evidence," *Thomure v. Truck Ins. Exchange*, supra, at 142, and it is sufficient, to uphold the defense, for the trial court to find that it is more likely than not that McCreery set the second fire or procured its setting. *Ferguson v. Am. Family Mut. Ins. Co.*, supra, at 1093; *Bennco Sales & Salvage v. Gulf Ins. Co.*, supra, at 338.

"In speaking of the evidentiary standards required to sustain a defense of arson in a suit on an insurance policy, this court in *Copeland v. American Cent. Ins. Co.*, 191 Mo.App. 435, 177 S.W. 820, 825 (1915), stated: 'Since the presumption is that men are honest and actuated by correct motives, fraud is nev-

er presumed. Neither will evidence which merely raises a suspicion of fraud suffice as proof of the existence thereof. * * * However, it is entirely legitimate to infer fraud from surrounding facts and circumstances which point directly to its existence.' (Citations omitted.) ... Again, quoting *Hopkins v. Sievert*, 58 Mo. 201 (1874): 'Very slight circumstances, therefore, may, although apparently trivial and unimportant of themselves, afford, when combined together, irrefragable proof of fraudulent intent.' "

*Garrison v. United States Fidelity & Guaranty Co.*, 506 S.W.2d 87, 89 (Mo.App. 1974).

McCreery asserts that the trial court made certain findings of fact which are not supported by the evidence. The challenged findings are these:

"7. Herbert J. Schmidt drove past the residence of Phil McCreery between 6:10 and 6:20 a.m. on November 29, 1987. At that time Schmidt observed flames extending through the roof and windows of the McCreery residence. Schmidt then turned south off of Highway 60 and drove past the McCreery residence, stopping at the home of a neighbor located south of the McCreery residence. The neighbor was awakened and notified the Neosho Fire Department. Neighbor Darlene Bacon was awakened and saw the fire burning through the roof between 6 and 6:15 a.m. Mr. Duncan also observed the fire at the same time.

16. Kelly Yates sold Phil McCreery about two gallons of gasoline in an open container during November of 1987.

17. Phil McCreery purchased approximately two gallons of gasoline in a container prior to November 29, 1987. The gasoline was purchased at Pump 'N Pantry on Highway 71 North in Neosho.

18. Phil McCreery had not purchased gas in a container during the year preceding November 29, 1987 except on the one occasion mentioned above.

19. On Sunday, November 22, 1987 and November 29, 1987 plaintiff visited his father-in-law, Wilbur LeMaster. He visited LeMaster between 6 and 7 a.m. on both dates. McCreery told Captain Lasiter and Bryce Toler that he had visited his father-in-law, Wilbur LeMaster, every Sunday in November.

21. Wilbur LeMaster told Dick Ebert and Marianne Sabiano that Phil McCreery visited him on Sunday, November 22, 1987 and November 29, 1987, but not for two Sundays prior to that."

With regard to finding 7, McCreery says that Darlene Bacon did not testify that she saw the fire burning through the roof between 6 and 6:10 a.m. He also says that the evidence makes no mention of "Mr. Duncan."

It is true that Darlene Bacon did not testify that she saw the fire burning through the roof around 6:10 to 6:15 a.m. on November 29. She did testify, however, that at 6:10 or 6:15 a.m. on November 29, someone knocked on her door. Herbert Schmidt testified that he did the knocking. He also testified that he saw the flames engulfing the house at 6 or 6:10 a.m., and that the fire was coming out the roof. The reference to "Mr. Duncan" may have been a typographical error. Perhaps the reference should have been to "Mr. Bacon." The main fact recited in finding 7 is that the fire was burning through the roof between 6 and 6:15 a.m., and that fact is supported by the testimony of Herbert Schmidt.

With regard to findings 16, 17 and 18, McCreery says: "Kelly Yates did not testify that McCreery purchased about two gallons of gasoline in an open container. McCreery did not testify that he purchased approximately two gallons of gasoline in a container prior to November 1987 from Pump 'N Pantry. There was no evidence that McCreery purchased gasoline in a container on only one occasion during the year prior to November 29, 1987."

Captain Lasiter testified, without objection, that when he interviewed Kelly Yates, Kelly Yates told him that on one occasion McCreery purchased gasoline from her at the Pump 'N Pantry. The gasoline was put "in a small container" and she could not remember whether that purchase was made before or after the first fire which

occurred November 22, "but around that time." Linda Frossard, who worked at the Pump 'N Pantry from November 1986 until August 1987 when Kelly Yates went to work there, testified that during the period Frossard worked, McCreery did not come in and buy gas in an open container. Findings 16, 17 and 18 are substantially supported by the evidence.

With regard to finding 19, McCreery says: "There was no evidence from either Captain Lasiter or Bryce Toler that McCreery made the statement that he visited his father-in-law, Wilbur LeMaster every Sunday in November."

At the trial McCreery was asked this question: "Do you recall telling the investigating officers, and specifically I am referring to Captain Lasiter of the fire department, that on each Sunday prior to the November 22 fire, on each Sunday of November you had gone to your father-in-law's?" McCreery's answer was, "Yes, I do that every Sunday." McCreery also testified that he visited LeMaster on November 22, 1987, and November 29, 1987, between 6 and 7 a.m. Finding 19 is supported by the evidence.

With regard to finding 21, McCreery says: "There was no evidence that Wilbur LeMaster made any statement to Dick Ebert, and the name of Marianne Sabiano does not appear in the record."

The statement attributed to Wilbur LeMaster in finding 21 was made to Pat Stuart of the Neosho Police Department, and the same information was contained in the file of Captain Lasiter. That file was introduced into evidence without objection. It is true that the record contains no mention of a person named Marianne Sabiano.

This court, of course, does not approve of inaccuracies in findings of fact made pursuant to a request under Rule 73.01(a)(2). A leading text authority, in discussing Fed. Rule Civ.Proc. 52, the counterpart of Rule 73.01, has criticized the practice of a court adopting verbatim findings prepared by winning counsel. Wright & Miller, Fed. Prac. & Proc. Civil § 2578 (1971). Such criticism seems even more appropriate when, as here, the findings have been pre-

pared in advance of trial, since even the most skillful advocate cannot predict with total accuracy what the evidence will be.

■ Although McCreery's criticism's of the trial court's findings are not totally lacking in merit, and the findings do contain some inaccuracies, most of the challenged findings have substantial support in the evidence.

Long ago our supreme court said:

"Where certain findings of fact made by the trial court are sufficient to support the judgment rendered, the judgment should be upheld even though the trial court based the judgment on other insufficient findings of fact, provided such insufficient findings are not inconsistent with or contradictory to the findings which do support the judgment."

*Holland Banking Co. v. Republic Nat. Bank*, 328 Mo. 577, 41 S.W.2d 815, 820[8] (1931).

"No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Rule 84.13(b). This court holds that the inaccuracies in the challenged findings of fact do not constitute prejudicial error.

■ McCreery next asserts that the trial court erred in considering evidence concerning a "voice stress test" administered to McCreery during the investigation of the November 29 fire and in considering evidence of McCreery's refusal to take a lie detector test.

In *State v. Biddle*, 599 S.W.2d 182, 185[1] (Mo. banc 1980), our supreme court held that the results of lie detector tests are inadmissible as evidence in a criminal trial "because they lack sufficient support for their reliability." The court also said: "Likewise, inadmissible in evidence are an accused's offer or professed willingness to submit to a polygraph examination, ... and testimony or prosecutorial comment to the effect that the accused was unwilling to undergo a polygraph examination."

In the case at bar, Continental's counsel, in his opening statement, said:

"The question of punitive damages was mentioned by Mr. Taylor.... Plaintiff is seeking punitive damages for failure to pay either within 60 days or at all and attorney fees and what have you. I think on that particular question there will be evidence that Mr. McCreery failed the stress test that he took at the Miami Police Department, and he refused to take a lie detector test after having told the investigating authorities that he would take a lie detector test."

There was no objection to the foregoing statement.

Plaintiff's witness Richard Ebert, on cross-examination by defense counsel, testified that a stress test "had been obtained from the Miami Police Department" and that he, Ebert, was informed that the stress test indicated some responsibility on the part of McCreery. After that testimony was received, plaintiff's counsel made an objection to it on the ground of hearsay. The court overruled the objection and stated that the evidence "has bearing on the punitive damages."

Ebert also testified that McCreery refused to take a lie detector test. There was no objection to that testimony. Other witnesses testified, without objection by McCreery, with regard to McCreery's refusal to take a lie detector test.

McCreery's brief in this court states:

"It is important for this court to recognize that Appellant is not arguing that the results of the voice stress test and Appellant's refusal to take a lie detector test would not have been admissible on appellant's claim of Vexatious Refusal to Pay. Appellant can find no Missouri case on that issue and is *willing to concede that said evidence may well have been admissible on the issue of whether Respondent has reasonable cause or ex-*

*cuse to refuse payment under its insurance policy."* (Emphasis added.)

In his post-trial motion, filed in the trial court, McCreery made the same concession.

In view of McCreery's concession, this court need not, and does not, reach the issue of the admissibility of evidence pertaining to the voice stress test[2] and McCreery's refusal to take a lie detector test. Cf. *Campbell v. Personnel Board of Kansas City,* 666 S.W.2d 806, 810–11 (Mo. App.1984).

If it be assumed that the evidence concerning the voice stress test and McCreery's refusal to take a lie detector test was inadmissible, McCreery's counsel made only one objection and it was untimely. Be that as it may, "[P]rejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal in any case tried before the judge without a jury." *City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 608[16] (Mo. banc 1983). "In a court tried case, it is almost impossible to base reversible error on an erroneous admission of evidence." *Cooper v. Cooper,* 778 S.W.2d 694, 699[14] (Mo.App.1989). Moreover, the trial court stated that he received the evidence because it had a bearing "on the punitive damages," an issue which was not reached. In receiving the challenged evidence, the trial court did not commit prejudicial error.

■ Finally, McCreery asserts that the evidence is insufficient to support the defense of arson.

The evidence previously summarized supports the following findings: A few days before the second fire, McCreery bought gasoline in a small container from Kelly Yates; between the two fires, McCreery left pants and other clothing with Ramona Dilday; in 1985, 1986 and 1987, McCreery's business sustained ever-increasing net losses; McCreery visited LeMaster on the morning of each of the two fires but did

---

**2.** See 47 A.L.R.4th 1202 (admissibility of voice stress evaluation test results or of statements made during test).

In arguing to the trial court that the evidence was admissible on the issue of Continental's

"vexatious refusal to pay," Continental's counsel cited *Moskos v. National Ben Franklin Ins. Co.,* 60 Ill.App.3d 130, 17 Ill.Dec. 389, 376 N.E.2d 388 (1978).

not do so on other Sundays in November 1987; following the second fire, McCreery made false statements concerning each of the foregoing matters.

The evidence also supports these findings: The first fire and the second fire were incendiary in origin; both fires were ignited before McCreery left his house; McCreery's house was locked when both fires were set, and he alone had the key; the first fire was set with the use of charcoal lighter and a globe which were already on the premises; McCreery had no known enemies; neither of McCreery's 1987 vehicles was in the attached garage at the time of the two fires, contrary to his custom.

It is unnecessary to determine whether any of the foregoing factors in the two preceding paragraphs, singly or in combination with some but not all of the others, is sufficient to support the defense of arson. It is sufficient to hold, as this court does, that the totality of the foregoing factors supports that defense.

The judgment is affirmed.

HOGAN, C.J., and MAUS, J., concur.