Judy K. PODRECCA,
Petitioner–Respondent,

v.

Guido I. PODRECCA,
Respondent–Appellant.

Judy K. PODRECCA,
Petitioner–Appellant,

v.

Guido I. PODRECCA,
Respondent–Respondent.

Nos. 16384, 16392.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 20, 1990.

**330**

C. Ronald Baird, David A. Fielder, Dorr, Biard and Lightner, P.C., Springfield, for Judy K. Podrecca.

John R. Lewis, Mary Lou Martin, John R. Lewis, P.C., Springfield, for Guido I. Podrecca.

FLANIGAN, Chief Judge.

This action for dissolution of marriage was instituted by Judy Podrecca against her husband Guido Podrecca. The parties, who will be referred to by their first names, were married on March 18, 1987. Judy was then almost 39 and Guido was 64. Each had been married before. Judy had three children by a prior marriage and Guido had one child. This marriage was child-less. The parties separated on February 6, 1988, and this action was filed on February 9, 1988.

On January 10, 1986, a Missouri corporation known as Podrecca Enterprises, Inc. (hereinafter referred to as "the corporation") was formed, and 500 shares of its stock were issued to Guido. No other shares were issued. Judy was president and chairman of the board of the corporation.

The parties made extended trips together in early 1986, and in May 1986 Judy "moved in" with Guido. On March 17, 1987, the day before the marriage, they entered into an antenuptial agreement which contained provisions dealing with "separate property ... as defined herein" in the event either filed an action for dissolution of the marriage.

On April 18, 1989, the trial court, after several evidentiary hearings, entered a judgment which, among other things, found that both parties "had acknowledged in their briefs the validity of the antenuptial agreement" and that the trial court concurred in that conclusion. Neither side challenges those findings.

In addition to dissolving the marriage, the trial court's judgment awarded Judy certain items as her separate property, other items as her unencumbered marital property, and other items as her encumbered marital property, with Judy to pay the encumbrances. None of those items was income-producing. The judgment also awarded Judy $3,000 as maintenance in gross and monthly maintenance in the amount of $700 for 18 months commencing February 1, 1989. Judy was also awarded attorney fees in the amount of $5,500.

The judgment awarded Guido the 500 shares of stock in the corporation and 23 assets, consisting of both realty and personalty, the combined value of which exceeded $400,000. Judy and Guido filed separate appeals, which were consolidated in this court.

In general, Guido contends that the trial court erred in not distributing to him $24,-284.53 which was approximately half of

$48,284.53 which Guido "derived from family inheritance in Italy." The other half of that inheritance was paid to Guido by Judy prior to the filing of the action. Guido also challenges the awards of maintenance and attorney fees which the court granted Judy.

In general, Judy contends that the trial court erred in construing paragraph 10A of the antenuptial agreement, in rejecting Judy's offer of a prior and unexecuted draft of the antenuptial agreement, and in finding that the corporation owed Guido $97,693 on the date the dissolution action was filed.

Guido's first point reads: "The trial court erred and abused its discretion in determining that [Guido's] separate non-marital assets were changed into marital funds and in failing to distribute one-half of [Guido's] separate non-marital funds." By motion, Judy challenges the sufficiency of Guido's first point and asserts that the point does not comply with Rule 84.04(d).[1]

■ Judy's position is sound, and the point is defective. "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder." Rule 84.04(d). One defect in the so-called point is that it fails to state "wherein and why" the alleged determination and failure are claimed to be erroneous. This court has made a gratuitous examination of Guido's argument under the point for possible plain error. See Rule 84.13(c). For the reasons which follow, this court finds no plain error and Guido's first point, even if properly stated, has no merit.

■ The point concerns $48,284.53 which Guido inherited from a relative in Italy. Several months after their marriage, Guido and Judy made an extended trip to Europe. The funds representing Guido's inheritance were in a bank at Rome. Guido and Judy went to the bank, where Guido conversed with a banker concerning the transfer of the funds to the United States. The conversation was in Italian, which Judy does not speak. During the conversation Guido asked Judy for the account number of their joint account in Springfield, Missouri. Although Guido had separate accounts in his own name, Judy did not have a card indicating the number of any of those accounts. Judy took from her purse a card bearing an account number which she thought was their joint account. Actually the account number was that of an account held jointly by Judy and her teenage son. The funds were transferred from the bank in Rome to Springfield, and were placed in the account of Judy and her son. The "wire transfer," received into evidence as Guido's Exhibit D, showed that the funds were to be transferred to the joint account of Guido and Judy, although the wrong account number was given.

Under the antenuptial agreement, in the event either Judy or Guido filed an action for dissolution, each was entitled to receive "one-half of all money in joint accounts and/or one-half of all jointly titled investments as the value exists on the date of such filing." Immediately prior to filing the divorce action, Judy paid Guido one-half of the inheritance. It is the other half, retained by Judy, to which Guido addresses his defective first point.

Guido argues that the trial court should have determined that he was entitled to all of the inherited sum. This argument ignores the provision of the antenuptial agreement requiring that joint accounts be divided equally. The wire transfer order evidenced the intent of Guido that the funds be deposited in such an account. Only Guido spoke with the banker who handled the transfer. By innocent mistake the funds were deposited in the wrong account, but Judy did not seek to profit from that mistake and gave Guido the one-half to which he was entitled under the antenuptial agreement.

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1986, V.A.M.S.

Guido's argument is based, to some extent, upon his own version of the transaction in the bank at Rome. Judy's version conflicted with Guido's. The judgment of the trial court includes this statement: "The court believes the testimony of [Judy] presented at the trial." This court defers to that finding. See *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Throughout this proceeding, Guido has taken the position that the antenuptial agreement is valid. The distribution of Guido's inheritance was in accordance with the agreement. Guido's first point, even if it had been properly preserved, has no merit.

Guido's second point is that the trial court erred in awarding Judy $3,000 as maintenance in gross, and maintenance in the amount of $700 for 18 successive months "for the reason that [Judy] failed to present evidence that she was unable to locate employment to become self supporting." Guido makes no claim that the antenuptial agreement was a bar to the maintenance award.

■ "Section 452.335 grants to the trial courts wide latitude in decreeing spousal maintenance." *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 800[2] (Mo. banc 1983). The award of maintenance is presumptively correct and Guido has the burden to demonstrate that it is erroneous. *In re Marriage of Schatz*, 768 S.W.2d 607, 613 (Mo. App.1989).

■ The judgment stated that one of the "important considerations" which the court had noted from the evidence was that Judy "has developed a health problem during the marriage involving her female organs and a hysterectomy surgery is under consideration. Also [Judy's] employment at trial was questionable and she no longer has her home and furniture owned prior to the marriage. [Guido] has substantial wealth and income together with his continued occupancy of his pre-marital home and furnishings." The trial court also mentioned the fact that Guido's "net worth," in the year preceding the trial, exceeded $800,000. The record fails to reflect a significant diminution of Guido's net worth since that time.

This court has scrutinized the voluminous transcript, as well as 37 exhibits offered by Judy and 15 exhibits offered by Guido. No precedential purpose would be served by an extended discussion of that evidence. Guido is a medical doctor whose income substantially exceeds that of Judy. Judy's wage income for 1986 was $549. In 1987 her total income was $6,312. In 1987 Guido's income was $34,588. Judy has significant health problems. Although Judy now holds a Missouri real estate license, she testified that she had no income in the first seven months of 1988 which preceded the trial. She also testified that she was going to have to leave Springfield because of threats Guido made concerning her reputation, "such as that I'll never have a bank account in Springfield and he's going to charge me with stealing." Although the corporation had given Judy several real estate "listings," Judy testified that "Guido cancelled all of my listings away from me." She said that she was "looking for a job." Two minor children of a previous marriage, for whom she received no child support, were living with her. Her monthly expenses exceeded $4,000.

This court holds that the record supports the challenged awards of maintenance. Guido's second point has no merit.

Guido's third point is that the trial court abused its discretion in awarding Judy attorney's fees in the sum of $5,500 "for the reason that [Judy's] conduct required the greater expense of attorney's fees."

■ In a dissolution action, the trial court has broad discretion in awarding or denying attorney's fees and the award will be disturbed on appeal only upon a showing that the trial court abused its discretion. *Lee v. Lee*, 782 S.W.2d 112, 116[8] (Mo.App.1989). Inability of the spouse to pay an attorney's fee is not a requirement for the awarding of a fee. *Id.* "One factor to consider in awarding attorney fees to a party is the extent to which the other party's conduct required the expense of attorney's fees." *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 655[6] (Mo. banc 1989).

■ Citing the quoted language from *T.B.G. v. C.A.G., supra,* Guido argues that Judy's "conduct required the greater expense of attorney's fees." Guido says, "The precipitating reason for the filing of the petition to dissolve the marriage was that [Judy] literally stole" Guido's inheritance of $48,284.53. Guido refers to the matters discussed under his first point. Contrary to Guido's position, this court's examination of the record, in light of the trial court's finding with respect to Judy's credibility, shows no misconduct on the part of Judy with respect to the inheritance.

Guido also alleges that Judy and her attorney spent "[an] inordinate amount of time" in discovery and at the trial itself concerning the antenuptial agreement and the valuation of corporate stock. Guido also complains that Judy's attorney "spent a great deal of time with [Guido] on the witness stand and in discovery concerning the valuation of non-marital assets."

The prolix record on appeal shows that some unnecessary discovery may have been conducted and that the trial could have been shortened. Unfortunately, that is true of most lawsuits. In leveling charges of loquacity, Guido's side must surely blush. The advocacy of Guido's counsel, in the trial court and here, is not a model of breviloquence. This court affirms the attorney's fee award in favor of Judy. Guido's third point has no merit.

Although Judy filed a motion to dismiss Guido's appeal on the ground that Guido's brief was defective, Judy's brief on her appeal is vulnerable to criticism. Contrary to the requirement of Rule 84.04(h), the argument portion of Judy's brief fails to have "specific page references to the legal file or the transcript." A gratuitous examination of Judy's three points discloses no error.

■ Judy complains that the trial court misconstrued the word "value" as used in paragraph 10A of the antenuptial agreement. Paragraph 10A reads:

"10. In the event that either party files in a court of competent jurisdiction for divorce, dissolution or (sic) marriage,

legal separation or separate maintenance:

A. Each party shall receive the stock of [the corporation] titled in their respective names or one-half the value of [the corporation] as of the date of such filing if the stock does not reflect equal ownership.

The trial court found that the liabilities of the corporation exceeded the value of its assets and that the corporation had "no value" or "a negative value."

The trial court also said:

"The court further finds that Paragraph 10 A. of the Agreement contemplates net value. If both parties owned an equal number of shares in the corporation, then, upon dissolution of the corporation, before monies would be distributed to the stockholders, all debts of the corporation would be paid. The court believes that the parties did not intend any other consequences."

This court has examined all of the provisions of the antenuptial agreement and its surrounding facts. This court agrees with the trial court's interpretation of the word "value" and rejects Judy's contention that the word, as used by the parties, "did not contemplate the deduction of any [liabilities of the corporation]."

Judy next contends that the trial court erred in rejecting evidence of a prior unexecuted draft of the antenuptial agreement. The record is unclear whether the prior draft, Exhibit 24, was received into evidence. At one point in the record it seems to have been admitted, but later the trial court, referring to Exhibit 24, said: "It hasn't been admitted into evidence." Moreover, "prejudicial or reversible error in the admission or rejection of evidence is not an issue on appeal in any case tried before the judge without a jury." *City of Town & Country v. St. Louis County,* 657 S.W.2d 598, 608[16] (Mo. banc 1983). See also *McCreery v. Continental Ins. Co.,* 788 S.W.2d 307, 314 (Mo.App.1990). Assuming, arguendo, but not deciding, that Exhibit 24 was admissible, this court, after examining the exhibit, does not alter its conclusion

that the trial court properly construed the word "value" contained in paragraph 10A of the antenuptial agreement.

■ Judy's third contention is that the trial court erred in finding that the corporation owed Guido $97,693 on the date this action was filed, "in that [Guido] failed to comply with the terms of the antenuptial agreement calling for documentation of said debt."

Judy argues that paragraph 7A of the antenuptial agreement imposed a duty on Guido to place in the corporate records documentation of the corporation's debt to Guido.

The fact is that paragraph 7A does not impose such a duty on Guido. Paragraph 7A says, in pertinent part: "[D]ocumentation of the debt due to [Guido] from [the corporation] [shall be] placed in the corporate records." Judy was president and chairman of the board of the corporation. Although Guido was a shareholder, Judy's brief makes no claim that Guido was a corporate officer or had any responsibility for the contents of the corporate records.

In any event, the evidence was convincing that the corporation's debt to Guido existed. Documentary evidence, including checks made by Guido to the corporation and income tax returns of the corporation, supported the trial court's finding that the corporation was indebted to Guido in the sum of $97,693 when the action was filed. Judy's appeal, like that of Guido, has no merit.

The judgment is affirmed.

HOGAN and SHRUM, JJ., concur.